IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIM RAY SACORA,                                        CV. 08-578-MA

                    Respondent,                    OPINION AND ORDER

          v.

J.E. THOMAS, Warden, FCI
Sheridan,

                    Respondent.

STEPHEN R. SADY
Chief Deputy Federal Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

DAVID F. SUGERMAN
520 S.W. Sixth Avenue, Suite 920
Portland, OR 97204

          Attorneys for Petitioner

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
SUZANNE A. BRATIS
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

          Attorneys for Respondent

1 - OPINION AND ORDER

MARSH, Judge

Petitioner Tim Ray Sacora, an inmate currently housed at the Federal Correctional Institution in Sheridan, Oregon (FCI Sheridan) seeks habeas corpus, declaratory, and injunctive relief pursuant to 28 U.S.C. §§ 2241, 1331, and 1343(3), on behalf of himself and a class of inmates who have been or will be considered for community corrections placement. Petitioner challenges certain Bureau of Prisons (BOP) policies following the amendment of 18 U.S.C. § 3624(c), known as the Second Chance Act, Pub. Law 110-199, § 231, 122 Stat. 657 (April 9, 2008)(SCA), which increased an inmate's eligibility for placement in a residential reentry center (RRC)[1] from six months to twelve.    Presently before the court is petitioner's motion for class certification.  For the reasons set forth below, petitioner's motion is GRANTED with revisions.

## BACKGROUND

Petitioner Sacora alleges that the BOP has established categorical rules that limit RRC placements to six months, despite a doubling of eligibility under the SCA.   Petitioner submits that these rules and policies violate 18 U.S.C. §§ 3621(b) and 3624(c), and the Administrative Procedure Act (APA).   Petitioner Sacora

---

[1]The BOP refers to community correctional facilities as halfway houses, residential reentry centers, and community correction centers.  This opinion will refer to them as RRCs for consistency. See Rodriguez v. Smith, 541 F.3d 1180, 1181 n.1 (9th Cir. 2008).

raises nearly identical issues as those asserted in a number of previous habeas corpus petitions filed by FCI Sheridan inmates concerning the BOP's RRC placement policies implementing the SCA.[2] This court has issued eight decisions to date.[3] To aid discussion concerning the propriety of certifying a class, an overview of the statutory history of the SCA and its implementation, as well as a brief review of the legal issues raised in the previous petitions and their disposition, is necessary. See, e.g., Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992)(noting that court may be required to consider evidence relating to merits of case when necessary to determine suitability of certification under Rule 23(a) and (b)); accord General Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982)("it may be necessary for the court to probe

---

[2]The cases include: Sass v. Thomas, 08-300-MA; Calloway v. Thomas, 08-544-MA; Pierce v. Thomas, 08-705; Clarine v. Thomas, 08-890-MA; Laney v. Thomas, 08-583-MA; Stone v. Thomas, 08-496-MA; Murray v. Thomas, 08-527-MA; Sherman v. Thomas, 08-438-MA; Sonobe v. Thomas, 08-560-MA; Beaman v. Thomas, 08-492-MA; Fuentes v. Thomas, 08-830-MA; Moore v. Thomas, 08-810-MA; Whitfield v. Thomas, 08-310-MA; Limani v. Thomas, 08-270-MA; Close v. Thomas, 08-261-MA; Badger v. Thomas, 08-1324-MA; and McGee v. Thomas, 09-455-MA. Counsel for petitioner has represented all petitioners except McGee.

[3]Sass v. Thomas, 2009 WL 2230759 (D. Or. July 23, 2009); Calloway v. Thomas, 2009 WL 1925225 (D. Or. July 1, 2009); Pierce v. Thomas, 2009 WL 1925469 (D. Or. July 1, 2009), adhered to on recon., 2009 WL 2476606 (August 10, 2009); McGee v. Thomas, 2009 WL 2182385 (D. Or. July 22, 2009); Badger v. Thomas, 08-1324-MA, 2009 WL 2382573 (D. Or. July 31, 2009); Clarine v. Thomas, 2009 WL 2382621 (D. Or. July 31, 2009); Whitfield v. Thomas, 08-310-MA (Opinion and Order (#34), July 31, 2009); and Limani v. Thomas, 08-270-MA (Order (#25), July 31, 2009).

behind the pleadings before coming to rest on the certification question.").

I.    **Statutory Background Relating to the SCA**.

Congress delegated inmate placement authority to the BOP in two statutes: 18 U.S.C. §§ 3621(b) and 3624(c). Under § 3621(b), the BOP is delegated broad discretionary authority to determine the proper placement of inmates at the *start* of an inmate's prison term. E.g., <u>Rodriquez v. Smith</u>, 541 F.3d 1180, 1182 (9th Cir. 2008). When exercising this discretion, the BOP is required to consider the following five statutory factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence—
>     (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28. 18 U.S.C. § 3621(b).

When considering the transfer of an inmate *during the course* of his imprisonment, the BOP must consider these same five factors. 18 U.S.C. § 3621(b); <u>Levine v. Apker</u>, 455 F.3d 71, 85 (2d Cir. 2006); <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 247 (3d Cir. 2005).

Pursuant to § 3624(c), the BOP is *required* to evaluate an inmate for RRC placement *near the end* of an inmate's sentence.

Prior to the SCA, § 3624(c) provided that the BOP "shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."

In 2002, the Office of Legal Counsel of the Department of Justice issued a legal opinion advising that the BOP could no longer exercise its discretion to allow a prisoner to serve all or part of his imprisonment in an RRC because RRCs did not constitute imprisonment. Rodriguez, 541 F.3d at 1182. Thus, in December 2002, the BOP changed its procedure to limit the time during which an inmate was eligible for placement in an RRC to the final ten percent of his sentence or six months, whichever was shorter. Id. Litigation ensued and courts subsequently invalidated that policy. See, e.g., Goldings v. Winn, 383 F.3d 17, 24 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004).

In response to those decisions, the BOP acknowledged that it had the discretion under 18 U.S.C. § 3621(b) to place inmates in RRCs at any time during their sentences. However, it elected to exercise its discretion to categorically limit inmates' RRC placement to the last ten percent of the prison term, not to exceed six months. Rodriguez, 541 F.3d at 1182-83. The BOP issued regulations so providing. 28 C.F.R. §§ 570.20, 571.21 (2005).

5 - OPINION AND ORDER

Following several other circuits, the Ninth Circuit issued a decision striking down those regulations as conflicting with the BOP's authority under § 3621(b). Rodriquez, 541 F.3d at 1187. The Ninth Circuit opined that "[b]ecause the BOP regulations categorically exclude [RRC] placement of inmates with more than ten percent of their sentences remaining, they necessarily fail to apply the mandatory factors listed in § 3621(b) to those inmates." Id. at 1187. Accord Wedelstedt v. Wiley, 477 F.3d 1160, 1161-62 (10th Cir. 2007); Levine, 455 F.3d at 87; Woodall, 432 F.3d at 244.

In April 2008, the SCA amended § 3624(c), increasing an inmate's RRC eligibility at the end of his sentence from six to twelve months. Section 3624(c) *now* provides in relevant part:

> (1) In general.- The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.[4]

## II. The BOP's Implementation of the SCA.

### A. April 14 Memorandum and Program Statement 7310.04.

Enactment of the SCA required adjustments to existing BOP policies and procedures relating to how and when inmates would

---

[4]Section 3624(c)(6) specifically requires that the BOP consider the five factors of § 3621(b) when making such placements.

receive consideration for RRC placement.  On April 14, 2008, the BOP issued a guidance memorandum detailing changes required by the SCA, including providing an RRC assessment 17 to 19 months prior to release, instead of the previous time frame of 11 to 13 months. The memorandum directs staff to conduct individualized assessments using the five factors of § 3621(b).  The memorandum instructs staff that all inmates are eligible for a maximum of twelve months RRC time, but that placements for longer than six months require approval from the Regional Director:

> **Regional Director Approval Required for Pre-release RRC Placement Beyond Six Months** – While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

The memorandum references Program Statement 7310.04, relating to community corrections placements, which provides in relevant part that "[a]n inmate may be referred for up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification." Program Statement 7310.04 similarly provides that placements longer than 180 days require the Warden to obtain approval from the Regional Director.[5]

---

[5]The full text of Program Statement 7310.04 and the other BOP Program Statements referenced in this Opinion can be found at www.bop.gov/DataSource/execute/dsPolicyLoc.

**B.   November 14 Memorandum and Program Statement 5100.08.**

On November 14, 2008, the BOP issued a memorandum to staff relating to inmate requests for transfers to RRCs when they have *more* than twelve months remaining on their sentences.    The memorandum provides that staff may not automatically deny requests for transfers, and that all requests must receive individualized consideration:

> If an inmate requests transfer to an RRC prior to the pre-release time frame of 12-months from release, staff must individually consider the request, just as they would any other request for lower security transfer. There is no need, however, to immediately perform the individualized review at the moment it is submitted. Rather, the inmate should be informed that his/her request will be fully reviewed in conjunction with the next scheduled Program Review.[6]

The memorandum also instructs BOP staff to consider the five statutory criteria provided in § 3621(b) and Program Statement 5100.08,[7] when making that assessment.   The November 14 Memorandum echoes the April 14 Memorandum in that RRC placements for longer than 180 days require unusual or compelling circumstances and approval from the Regional Director.

---

[6]Program Reviews occur approximately every 180 days, at which time an inmate's "unit team" discusses his progress on programs such as obtaining a GED or substance abuse counseling. Program Statement 5322.12 at p. 4-5.

[7]Program Statement 5100.08 details the BOP's inmate security designation and classification system.

**C. Regulations 28 C.F.R. §§ 570.20-570.22.**

On October 21, 2008, the BOP published regulations implementing the SCA. 73 Fed. Reg. 62,443. Section 570.21 provides that inmates may be designated to community confinement near the end of their prison terms, not to exceed twelve months. Section 570.22 provides the following:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

The rules were effective on the date of publication and comments were accepted until December 22, 2008. Final rules have not been issued by the BOP.

**III. <u>Previous Litigation Concerning the SCA</u>.**

As mentioned above, petitioner's case is one of eighteen habeas corpus proceedings filed in this court challenging the BOP's policies concerning RRC placement. Initially, the inmates were proceeding *pro se*. Several challenged the BOP's refusal to place them in an RRC prior to the final portion of their prison term. (<u>E.g.</u>, <u>Sass</u>, 08-300-MA, <u>Calloway</u>, 08-544-MA.) Another challenged the BOP's refusal to grant him 12-months RRC time under § 3624(c) and the BOP's policies on procedural grounds. (<u>Pierce</u>, 08-705-MA.) Several inmates secured counsel, and at the parties' request, the

cases were assigned to a single judge, and three of the cases were designated as "lead cases." (<u>Sass</u>, <u>Calloway</u>, and <u>Pierce</u>.)

Counsel then filed amended petitions in each lead case substantially broadening the scope of the claims sought to be asserted but with scant factual allegations to support them. Each of the lead cases made the following legal challenges to the BOP's policies implementing the SCA:

(1)    The April 14 Memorandum and Program Statement 7310.04 are inconsistent with 18 U.S.C. § 3624(c), and not entitled to deference under <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council</u>, 467 U.S. 837 (1984);

(2)    The BOP's policies (the April 14 Memorandum, November 14 Memorandum, Program Statement 7310.04, and Program Statement 5100.08) are inconsistent with 18 U.S.C. § 3621(b);

(3)    The BOP's policies are substantive rules under the Administrative Procedures Act (APA), and thus are invalid because they did not undergo notice and comment as required in 5 U.S.C. § 553(b);

(4)    The BOP's policies are invalid under § 706(2)(A) of the APA because the BOP failed to articulate a sufficient rationale for adopting a presumptive six-month maximum RRC placement;

(5)    The regulations, 28 C.F.R. §§ 570.20-570.22, are procedurally invalid because they were promulgated without notice and comment as required under the APA; and

(6)    The regulations, 28 C.F.R. §§ 570.20-570.22, are substantively invalid because they merely paraphrase the statute.

Each of these amended petitions suffered factual difficulties, and consequently, jurisdictional defects. For example, in <u>Sass</u>,

10 - OPINION AND ORDER

the bulk of the claims under § 3624(c) were not ripe for review because three years remained before Sass's February 2012 projected release date and, as he ultimately conceded, none of the BOP's policies concerning pre-release RRC placement had been applied to him. Sass v. Thomas, 2009 WL 2230759, *4-5 (D. Or. July 23, 2009). Additionally, Sass failed to allege facts in his amended petition demonstrating an injury under the November 14 Memorandum.

A similar situation was presented in Calloway. Calloway's claims under § 3624(c) were not ripe because he had not yet received pre-release RRC placement review, as his September 2011 projected release date was nearly two years away. Calloway v. Thomas, 2009 WL 1925225, *4-5 (D. Or. July 1, 2009). Calloway also failed to allege any specific facts to enable the court to determine whether the November 14 Memorandum had been applied to him.

In Pierce, the petitioner was transferred to an RRC while his case was pending, rendering his claims under § 3624(c) moot. Because Pierce was not challenging the length of his sentence, only his location, there was no effective relief the court could provide.[8] Pierce v. Thomas, 2009 WL 1925469, *3 (D. Or. July 1, 2009).

---

[8]Relying on the decision in Pierce, I granted respondent's Motions to Dismiss in Clarine, Badger and Whitfield because the petitioners had been transferred to RRCs while their cases were pending.

11 - OPINION AND ORDER

A non-lead case also challenged the BOP's actions implementing the SCA.  McGee v. Thomas, 2009 WL 2182385 (D. Or. July 22, 2009). In McGee, the petitioner presented a sufficient factual record to assess the BOP's actions under § 3624(c).  McGee challenged the BOP's decision to give him a 30 to 60 day pre-release RRC placement.  I ruled that the April 14 Memorandum and Program Statement 7310.04 were consistent with §§ 3624(c) and 3621(b), and thus were substantively valid.  I also concluded that the April 14 Memorandum and Program Statement 7310.04 were general statements of policy or interpretive rules, and thus were exempt from the notice and comment provisions of the APA.  Consequently, relief under § 706 of the APA was not warranted.

## IV.  **Petitioner Sacora's Amended Petition**.

Petitioner's amended petition is virtually identical to those received in the lead cases discussed above.  Although the amended petition is 18 pages in length, it contains only three short paragraphs detailing how the BOP policies have been applied to petitioner:

> ¶ 3.1 Petitioner was convicted of wire tapping and money laundering in the United States District Court for the Middle District of Florida, and on August 28, 2006, Petitioner was sentenced to a term of imprisonment of 60 months to be followed by three years of supervised release.  United States v. Sacora, CR 04-95.

> ¶ 3.2 On September 29, 2006, Petitioner began service of his 60-month sentence, and the BOP calculated Petitioner's projected release date as October 10, 2010.

¶ 3.3  The BOP has informed Petitioner that he would be recommended for a 180-day maximum community corrections placement according to the BOP's rules in effect at the time implementing the Second Chance Act.  Mr. Sacora is tentatively scheduled for transfer to community corrections on April 8, 2010. (Amended Petition for Writ of Habeas Corpus (#21).)

Petitioner raises the same numerous legal challenges as the lead cases, listed in section III above.  Petitioner does not challenge his individual RRC placement determination or those of the class members, but merely seeks to challenge the legality of the underlying policies arriving at those decisions. (Memorandum in Support, (# 23) p. 2.)  Petitioner seeks class certification to end the piecemeal rulings resulting from individual habeas corpus actions.  (Id.)

## CLASS CERTIFICATION

### I.  Standards.

A district court possesses broad discretion in determining whether a suit should proceed as a class action, and to revisit that certification throughout the legal proceedings.  Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186, amended, 273 F.3d F.3d 1266 (9th Cir. 2001).  The party seeking to certify a class bears the burden of establishing that certification is proper under Rule 23(a) and that the class falls within one of the permitted categories of Rule 23(b).  Rodriquez v. Hayes, 578 F.3d 1032, 1047 (9th Cir. 2009).  This court must engage in a "rigorous

analysis" to determine whether each of the prerequisites of Rule 23 are satisfied.  <u>Gen. Tel. v. Falcon</u>, 457 U.S. at 161.

Rule 23(a) provides four threshold requirements for all class actions.  It provides that a class action may be maintained only if each of the following elements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

In addition to satisfying the elements of Rule 23(a), petitioner also must satisfy one of the categories of Rule 23(b).  <u>Walters</u> v. Reno, 145 F.3d 1032, 1046-47 (9th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1003 (1999).  Here, petitioner seeks certification under Rule 23(b)(2).[9]  Certification under Rule 23(b)(2) requires showing that:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Fed.R.Civ.P. 23(b)(2); <u>Zinser</u>, 253 F.3d at 1195.

---

[9]Petitioner's motion for class certification indicates that he seeks certification under Rule 23(b)(3), however, his memorandum in support of class certification chiefly asserts the propriety of certifying the class under Rule 23(b)(2).

Petitioner requests certification of a class including all federal prisoners at FCI Sheridan who have been or will be considered for community corrections placement under 18 U.S.C. §§ 3621(b) and 3624(c).  In addition to disputing whether petitioner satisfies all of the requirements in Rule 23(a) and (b), respondent chiefly opposes certification on the preliminary ground of standing.

Where a claimant is seeking system-wide relief from a written policy, the issues of standing and class certification are often intermingled.  <u>Armstrong v. Davis</u>, 275 F.3d 849, 860 (9th Cir. 2001), <u>cert. denied</u>, 537 U.S. 812 (2002); <u>Hawkins v. Comparet-Cassani</u>, 251 F.3d 1230, 1236-37 (9th Cir. 2001); <u>see also</u> <u>Gratz v. Bollinger</u>, 539 U.S. 244, 263 & n.15 (2003).  Whether the requirement is discussed under the rubric of Article III standing or adequacy of representation under Rule 23(a), this court must be satisfied that the named class representative is the proper person to assert claims on behalf of all members of the class.

## II.  <u>Analysis</u>.

### A.  Standing.

Respondent opposes class certification because petitioner lacks Article III standing to assert all the claims in the amended petition.  According to respondent, because petitioner has failed to demonstrate that he was injured by the application of the November 14 Memorandum to him, a class may not be certified.

15 - OPINION AND ORDER

To initiate any federal action, including a class action, a petitioner must allege Article III standing--an actual case or controversy, demonstrating that he has sustained some direct injury or threat of injury that is real and immediate, not hypothetical. O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Sosna v. Iowa, 419 U.S. 393, 402 (1975). The named class representative must have the requisite "personal stake in the outcome" and be a member of the class which he or she seeks to represent at the time the class is certified. O'Shea, 414 U.S. at 494; Sosna, 519 U.S. at 403. "A named plaintiff cannot represent a class alleging . . . claims that the named plaintiff does not have standing to raise." Hawkins, 251 F.3d at 1238.

Turning to the allegations in the amended petition, petitioner has sufficiently alleged an injury under the BOP's pre-release RRC policies implementing § 3624(c). Petitioner contends that his projected release date is October 10, 2010, and that he has received only 180 days placement in an RRC, tentatively scheduled to begin on April 8, 2010. (Amended Petition, (#21) ¶ 3.3.) Additionally, petitioner alleges that he has been evaluated "according to the BOP's rules in effect at the time implementing the Second Chance Act." (Id.)

Absent from the amended petition, however, are any factual allegations specific to petitioner Sacora detailing any injury he suffered from application of the November 14 Memorandum or the

BOP's refusal to exercise its discretion to place him in an RRC prior to the final months of his sentence under § 3621(b).

In his reply, petitioner contends that respondent's position concerning standing is "premised on a sharp division between § 3621(b) and § 3624(c) that does not exist either in the statutes or in the BOP's rules."[10]  Petitioner submits that the six-month presumption contained in the November 14 Memorandum cross-references the April 14 Memorandum and Program Statement 7310.04 and therefore his claims are sufficiently interrelated so that he has standing to challenge either memoranda, citing <u>Gratz v. Bollinger</u>, 539 U.S. at 265.  After careful consideration, I disagree.

In <u>Gratz</u>, Patrick Hamacher applied for admission to the University of Michigan as a freshman, and was denied under a policy which Hamacher contended unconstitutionally gave preference to racial minorities.  Hamacher sought declaratory and injunctive relief, in addition to compensatory damages, on behalf of himself and a class of others.  <u>Id.</u> at 252.  The district court certified

---

[10]Although petitioner contends that there is no difference between the BOP's authority under § 3621(b) and § 3624(c), courts have recognized a critical distinction.  <u>See, e.g.</u>, <u>Rodriguez v. Smith</u>, 541 F.3d at 1185.  Although the statutes do overlap in certain regards, I have found that the BOP's authority is nonetheless distinct under each statute.  <u>See</u> <u>Sass</u>, 2009 WL 2230759 at *2.

a class under Rule 23(b)(2) and named Hamacher as the sole class representative. Id. at 253.

Addressing Article III standing for the first time while on review at the Supreme Court, the Court held that Hamacher had standing to raise class claims for injunctive and declaratory relief, despite that he had already enrolled in another university at the time he filed his action. Id. at 263. The Court concluded that the allegations in Hamacher's complaint, that he intended to seek admission as a transfer student, were sufficient to establish standing because "the University's use of race in undergraduate transfer admissions does not implicate a significantly different set of concerns than does its use of race in undergraduate freshman admissions." Id. at 265. Thus, Hamacher's operative pleading at the time of certification alleged the threat of an injury which would subject him to nearly the same standards should he seek to transfer, which the court concluded sufficiently established Article III standing. Id.

In the present case, however, the petition as currently pleaded fails to allege any facts that might support petitioner's standing to assert a claim under the BOP's policies prior to the final months of his term under § 3621(b), a critical distinction from Gratz. Unlike Gratz, petitioner Sacora does not make any allegations whatsoever as to how he has suffered a specific injury in the past or is threatened with a future injury under the

18 - OPINION AND ORDER

November 14 Memorandum or the BOP's policies under § 3621(b). While the November 14 Memorandum and April 14 Memorandum are similar in that they both purportedly create a six-month presumptive RRC placement, absent some factual allegations of an injury or a threatened injury under § 3621(b) or the November 14 Memorandum, his current pleading falls short of what is required to establish Article III standing as to those claims, even under a broad reading of Gratz.

Accordingly, I find this case is more akin to Blum v. Yaretsky, 457 U.S. 991, 999 (1982). In Blum, a class action was certified concerning nursing home Medicaid recipients who had been transferred to lower levels of care without adequate notice of the transfer decision and notice of their right to challenge that decision. Id. at 996. Later, the class was amended to include residents who received transfers to higher levels of care without a similar notice. Id. at 997. On appeal, the Supreme Court ruled that the class representatives, who had all received lower level transfers, lacked standing to assert claims on behalf of those receiving higher level transfers. Id. at 1001. The Blum court ruled:

> It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in

litigating conduct of another kind, although similar, to
which he has not been subject.  Id. at 999.

See also Hawkins, 251 F.3d at 1238 (ruling that convicted prisoner
did not have standing to raise claims on behalf of non-convicted
persons challenging use of a stun belt in court proceedings).

Because the amended petition, as currently framed, is devoid
of any facts asserting an injury–or even a potential injury under
§ 3621(b), I reluctantly cannot certify a class concerning claims
under § 3621(b) and the November 14 Memorandum at this time.  In so
holding, I note that petitioner alleged in his original *pro se*
petition that he did seek to challenge the BOP's refusal to
consider him for RRC placement prior to the end of his sentence, in
a Program Review dated January 30, 2008.  (Petition for Writ of
Habeas Corpus, (#1) p. 2.)  However, it is unclear from the record
whether that claim was exhausted or how the BOP responded.  In any
event, the facts concerning the January 30, 2008 RRC request were
omitted from the amended petition filed by counsel.

In reaching this decision on standing, I am mindful of the
Ninth Circuit's instructions to examine the question of "injury"
realistically, and to not parse the question too narrowly.
Armstrong, 275 F.3d at 867.  I concur with petitioner that
resolution of both policies concerning the alleged six-month
presumption would promote efficiency and judicial economy.
However, I am convinced that the best course of action at this

early stage of the certification process is to amend the operative pleading, or to include additional named class representatives who more clearly have standing to raise such claims on behalf of the class. Certainly, this court may not overlook the requirements of Article III standing, and must be assured that class certification is not defective. See id. at 869; Hawkins, 251 F.3d at 1238; Casey v. Lewis, 4 F.3d 1516, 1524 (9th Cir. 1993).

Accordingly, this court grants petitioner leave to amend the current petition to include allegations detailing any RRC placement requests made by petitioner Sacora and any alleged injury he suffered under § 3621(b) and the November 14 Memorandum. Alternatively, petitioner may identify an additional class representative who has suffered an injury under § 3621(b) and the November 14 Memorandum and amend the pleadings to include such allegations.[11] Petitioner has 14 days from the date of this Order to do so.

Having concluded that petitioner has standing to assert claims concerning the BOP's pre-release RRC policies under 18 U.S.C. § 3624(c), I must consider whether he has satisfied the requirements of Rule 23.

---

[11]It appears that petitioner anticipated needing to identify additional class representatives. Petitioner noted in his memorandum supporting class certification that he expects to "file for at least two other petitioners to be additional class representatives." (Memorandum in Support, (#23) p. 9 n.2.)

21 - OPINION AND ORDER

///

///

///

**B.   Rule 23(a).**

A class action may be maintained only if the party seeking certification demonstrates the requirements of numerosity, commonality, typicality, and that the named representative will adequately protect the interests of the class as a whole. Fed. R. Civ. P. 23(a).

**1.   Numerosity.**

Rule 23(a) requires that the members of a class be so numerous that joinder of all members of the class is impracticable.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).  A fixed number is not required, and this district has held that forty members is sufficient to satisfy this element.  <u>Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.</u>, 188 F.R.D. 365, 373 (D. Or. 1998).  At present, there are 10 cases pending before this court purporting to raise similar issues. Petitioner indicates there are presently 1,860 prisoners at FCI Sheridan, many of whom will be eligible for RRC consideration near the end of their sentences.  Given that respondent does not challenge the numerosity element of the Rule 23(a), I conclude that petitioner has satisfied this element.  <u>Hanlon</u>, 150 F.3d at 1019.

**2.   Commonality.**

The commonality requirement serves two purposes: "'(1) ensuring that the absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management.'" Rodriquez v. Hayes, 578 F.3d at 1048 (quoting Walters, 145 F.3d at 1045). This requirement has been interpreted permissively. Hanlon, 150 F.3d at 1019. All questions of law and fact need not be "completely congruent"; the existence of shared legal issues with divergent factual predicates may be sufficient. Rodriquez v. Hayes, 578 F.3d at 1048; In Re First Alliance Mortg. Co., 471 F.3d 977, 990 (9th Cir. 2006).

Respondent contends that petitioner has not demonstrated that all questions are common to the class. Petitioner has demonstrated that at minimum, there are shared legal questions concerning the legality of the BOP's pre-release RRC policies and practices implementing § 3624(c). Answering these questions comprehensively in a class setting may facilitate the development of a complete record for analyzing petitioner's claims. Thus, I conclude that this element is satisfied. See Armstrong, 275 F.3d at 868 ("commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members").

### 3. Typicality.

The typicality requirement looks to whether the class representative's claims are typical of those of the class. Where,

as here, the challenged conduct is a policy or practice that affects all class members, "the typicality inquiry involve[s] comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." Armstrong, 275 F.3d at 869; Rodriguez v. Hayes, 578 F.3d at 1049.   As with commonality, typicality is construed permissively, meaning that the representative's claims must be reasonably co-extensive with those of absent class members; they need not be identical.   Rodriguez v. Hayes, 578 F.3d at 1049; Hanlon, 150 F.3d at 1020.

For example, in the Ninth Circuit's recent determination in Rodriguez v. Hayes, the court concluded that the typicality element was satisfied despite that the class representative and other class members had been detained under a different statutes and were at different levels in the INS removal process, because they were all challenging the constitutionality of their prolonged detentions while in immigration proceedings.   578 F.3d at 1049-50.

Petitioner Sacora contends that his claims are typical of the class because the inmates are challenging the same conduct–the BOP's application of a six-month presumption for pre-release RRC placements.   Thus, although some class members may have received more pre-release RRC time than others, the alleged injury of petitioner Sacora is reasonably co-extensive with absent class members.   I agree that petitioner's claims concerning the BOP's placement authority under § 3624(c) are typical of the class, and

24 - OPINION AND ORDER

that he has satisfied Rule 23(a)(3).   See Armstrong, 275 F.3d at 869.

### 4.   Adequately Represent Claims of the Class.

"Requiring the claims of the class representatives to be adequately representative of the class as a whole ensures that the interests of absent class members are adequately protected." Walters, 145 F.3d at 1046.   This requirement depends upon "the qualifications of counsel, an absence of antagonism, a sharing of interests between representatives and absentees," and the unlikelihood that the case is collusive.   Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)(internal quotations omitted); Rodriquez v. Hayes, 578 F.3d at 1050.

Petitioner is an adequate representative for those members of the class seeking to challenge the BOP's pre-release RRC placement policies pursuant to § 3624(c).   Petitioner's alleged injuries are not antagonistic to other claims and any factual differences do not prevent certification under Rule 23(a)(4).

Respondent does not challenge the adequacy of counsel for the class representative.   Given plaintiff's counsel's experience in handling the issues presented by the previous and pending habeas corpus petitions, there is no doubt that counsel will vigorously prosecute this action on behalf of the class as required under Rule 23(a)(4).

Respondent contends that petitioner is not an adequate representative because he has not fully exhausted his claim.  See Phillips v. Klassen, 502 F.2d 362, 369 (D.C. Cir.), cert. denied, 419 U.S. 996 (1974)(requiring exhaustion by at least one member of the class).  The pleadings and evidence submitted by the parties establish that petitioner has completed two levels of administrative review, and is currently pursuing the third step. This final level of review presumably will conclude before this court addresses the merits of petitioner's claims. (Motion to Supplement Motion for Class Certification (#34).)  As such, I conclude petitioner has demonstrated exhaustion for purposes of class certification.

Accordingly, petitioner has satisfied Rule 23(a) for claims concerning the BOP's RRC pre-release placement policies under § 3624(c).

**C.    Rule 23(b).**

Petitioner seeks certification under Rule 23(b)(2). Certification under Rule 23(b)(2) requires showing that the primary relief sought is declaratory or injunctive.  Zinser, 253 F.3d at 1195.

In the instant proceeding, the class as a whole has been subjected to the BOP's policies and practices, making certification under Rule 23(b)(2) appropriate.  Petitioner seeks only declaratory and injunctive relief, and seeks no monetary relief.  Under Rule

26 - OPINION AND ORDER

23(b)(2), more is not required.  <u>Walters</u>, 145 F.3d at 1047;
<u>Rodriquez v. Hayes</u>, 578 F.3d at 1051.  Certification of a class
under Rule 23(b)(2) is appropriate here.

   **D.    The Class Definition.**

   In addition to the requirements of Rule 23(a) and (b), there
is an implied prerequisite that the class be adequately defined and
readily ascertainable.  <u>Davis v. Astrue</u>, 250 F.R.D. 476, 484 (N.D.
Cal. 2008); <u>Oshana v. Coca-Cola Co.</u>, 472 F.3d 506, 513 (7th Cir.
2006), <u>cert. denied</u>, 551 U.S. 1115 (2007); <u>DeBremaecker v. Short</u>,
433 F.2d 733, 734 (5th Cir. 1970).  The definition of the class must
be sufficiently defined so that the court may adequately capture
appropriate members of the class:

> the class must not be defined so broadly that it
> encompasses individuals who have little connection with
> the claim being litigated; rather, it must be restricted
> to individuals who are raising the same claims or
> defenses as the representative. Wright & Miller, 7A Fed.
> Prac. & Proc. Civ. 3d § 1760.

   In the instant proceeding, petitioner proposes a nationwide
class defined as follows:

> All federal prisoners serving sentences in the District
> of Oregon who have been or will be considered for
> community corrections placement under 18 U.S.C.
> §§ 3621(b) and 3624(c).

   Petitioner purports to seek a nationwide class, yet the
proposed definition includes only those within the District of
Oregon.   I conclude that petitioner has not sufficiently
demonstrated the need for a nationwide class action, as the amended

27 - OPINION AND ORDER

petition alleges other institutions and regions are approving placements longer than 180 days. (Amended Petition (#21)¶ 3.53.) Furthermore, petitioner has not demonstrated that this court has jurisdiction over the claims of inmates residing outside the District of Oregon. <u>See</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 702-03 (1972)(in certifying a nationwide class, court must be certain that such relief is appropriate, will not interfere with other ongoing litigation, and the court has jurisdiction); 28 U.S.C. § 2241(a).

Respondent asserts that the proposed class is overly broad and includes all inmates at FCI Sheridan, even those who are not eligible for RRC consideration.  This court is concerned that the proposed definition sweeps too broadly.  Here, petitioner complains of a six-month presumptive maximum RRC placement, yet the proposed definition does not adequately identify the offending policies, or individuals subjected to those policies. <u>Davis</u>, 250 F.R.D. at 476; <u>Hickey v. City of Seattle</u>, 236 F.R.D. 659, 664 (W.D. Wash. June 5, 2006)(altering class definition to aid identification of class members).

This error is not fatal to certification, however, and is easily corrected.  Thus in the interest of readily identifying class members, the court defines a district-wide class as follows:

> All federal prisoners serving sentences in the District of Oregon who have been denied or will be denied community corrections placement in excess of six months under 18 U.S.C. § 3624(c), pursuant to the Bureau of

Prisons April 14, 2008 Memorandum, Program Statement 7310.04 and 28 C.F.R. § 570.20 *et seq*.

As petitioner submits, the heart of his claim is the application of a six-month presumption limiting RRC placements. The class is so defined to ensure that only such members will be included.[12]

### CONCLUSION

Based on the foregoing:

1.  Petitioner's Motion for Class Certification (#22) is GRANTED IN PART, and DENIED IN PART;

2.  This action shall proceed as a class action on behalf of:

    All federal prisoners serving sentences in the District of Oregon who have been denied or will be denied community corrections placement in excess of six months under 18 U.S.C. § 3624(c), pursuant to the Bureau of Prisons April 14, 2008 Memorandum, Program Statement 7310.04 and 28 C.F.R. § 570.20 *et seq*.;

3.  Petitioner Tim Ray Sacora shall serve as class representative;

4.  Petitioner may identify a class representative and/or amend the amended petition to allege facts necessary to set forth an injury under the BOP's November 14 Memorandum and 18 U.S.C. § 3621(b) within 14 days of this Order;

5.  Attorneys Stephen R. Sady and David F. Sugerman shall serve as counsel for the class; and

////

////

---

[12]Should petitioner amend his petition to include allegations sufficient to establish standing to challenge the November 14 Memorandum and § 3621(b) or add an additional named class representative with standing, the class definition will be revisited to include such claims.

29 – OPINION AND ORDER

////

6.    The parties may submit briefing discussing the propriety of providing notice pursuant to Fed.R.Civ.P. 23(c)(2) to affected inmates within 14 days of the date of this Order if such notice is desired.

IT IS SO ORDERED.

DATED this _3__ day of DECEMBER, 2009.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge