IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TIM RAY SACORA,

        Petitioner,

LARRY L. BEAMAN and                  CV. 08-578-MA
TODD SONOBE,

                             OPINION AND ORDER
        Petitioners-         IN A CLASS ACTION
        Intervenors,

    v.

J.E. THOMAS, Warden, FCI
Sheridan,

        Respondent.

STEPHEN R. SADY
Chief Deputy Federal Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

DAVID F. SUGERMAN
520 S.W. Sixth Avenue, Suite 920
Portland, OR 97204

     Attorneys for Petitioner & Petitioners Intervenors

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

     Attorneys for Respondent

1 - OPINION AND ORDER

MARSH, Judge

Petitioners seek habeas corpus, declaratory, and injunctive relief pursuant to 28 U.S.C. §§ 2241, 1331, and 1343(3), on behalf of themselves and a class of inmates at the Federal Correctional Institution in Sheridan, Oregon.    Petitioner Tim Ray Sacora represents inmates who have been or will be denied *pre-release* community corrections placement in excess of six months under 18 U.S.C. § 3624©.    Petitioners Larry L. Beaman and Todd Sonobe represent inmates who have been or will be denied community corrections placement *prior to the end* of their prison terms under 18 U.S.C. § 3621(b).

Petitioners challenge Bureau of Prisons (BOP) policies and regulations promulgated following the amendment of 18 U.S.C. § 3624©, known as the Second Chance Act.   Pub. Law 110-199, § 231, 122 Stat. 657 (April 9, 2008) (SCA).   Petitioners contend that the policies and regulations establish categorical rules that limit placements in residential reentry centers (RRC)[1] to six months, despite the increase of eligibility to 12 months under the SCA; are inconsistent with the authorizing statutes, 18 U.S.C. §§ 3621(b) and 3624©; and are invalid under §§ 553(b) and 706(2)(A) of

---

[1] The BOP refers to community correctional facilities as halfway houses, residential reentry centers, and community correction centers.   This opinion will refer to them as RRCs for consistency. See Rodriguez v. Smith, 541 F.3d 1180, 1181 n.1 (9th Cir. 2008).

the Administrative Procedure Act (APA).    For the reasons that

follow, the petition is granted in part and denied in part.

<u>BACKGROUND</u>

I.    <u>**Statutory Background and Passage of the SCA**</u>.

Congress delegated inmate placement authority to the BOP in

two statutes:  18 U.S.C. §§ 3621(b) and 3624©.    Under § 3621(b),

the BOP is delegated broad discretionary authority to determine the

proper placement of an inmate at the *start* of the inmate's prison

term.    <u>E.g.</u>, <u>Rodriquez v. Smith</u>, 541 F.3d 1180, 1182 (9th Cir.

2008).    When exercising this discretion, the BOP is required to

consider the following five statutory factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence-
> > (A) concerning the purpose for which the
> > sentence to imprisonment was determined to be
> > warranted; or
> > (B) recommending a type of penal or
> > correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the
> Sentencing Commission pursuant to section 994(a)(2) of
> title 28.  18 U.S.C. § 3621(b).[2]

Pursuant to § 3624©, the BOP is *required* to evaluate an inmate

for RRC placement *near the end* of an inmate's sentence.  18 U.S.C.

§ 3624©.    Prior to the SCA, § 3624© limited pre-release RRC

---

[2] When considering the transfer of an inmate *during the
course* of his imprisonment, the BOP also must consider these same
five factors.  18 U.S.C. § 3621(b); <u>Levine v. Apker</u>, 455 F.3d 71,
85 (2d Cir. 2006); <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d
235, 247 (3d Cir. 2005).

placements to the shorter of the final 10 percent of the prison term, or six months.  In April 2008, the SCA amended § 3624©, increasing an inmate's RRC eligibility at the end of his sentence to 12 months.  Section 3624(c)(1) now provides:

> (1) In general.– The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

The BOP must consider the five factors of § 3621(b) when making such placements.  18 U.S.C. § 3624(c)(6); <u>Rodriquez</u>, 541 F.3d at 1186.

**II.  <u>The BOP's Implementation of the SCA</u>.**

**A.    April 14 Memorandum and Program Statement 7310.04.**

On April 14, 2008, the BOP issued a guidance memorandum which details the changes required by the SCA, notably: (1) that inmates are eligible for a 12 month RRC placement; (2) that inmates are required to receive an individualized placement assessment under § 3621(b); and (3) that court recommendations concerning RRC placements lack binding effect. (Pet. Ex. (#48) F.)  The April Memorandum also includes the following provision:

> **Regional Director Approval Required for Pre-release RRC Placement Beyond Six Months** – While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine

an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Program Statement (P.S.) 7310.04, provides that "[a]n inmate may be referred for up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification" and with approval from the Regional Director. (Pet. Ex. (#48) D, p.9.) The April Memorandum instructs staff that P.S. 7310.04 remains in effect, with certain adjustments to reflect the SCA. The adjustments to the program statement include: (1) providing an RRC assessment 17 to 19 months prior to release, instead of the previous time frame of 11 to 13 months; (2) conducting individualized assessments of inmates using the five factors in § 3621(b); (3) ignoring any criteria contained in P.S. 7310.04 which could be construed as automatically precluding an RRC placement; (4) ensuring that pre-release RRC placements are "of sufficient duration to provide the greatest likelihood of successful reintegration into the community;" and (5) ignoring any provisions in P.S. 7310.04 which reflect any other possible time frame.

**B.    Regulations 28 C.F.R. §§ 570.20-570.22.**

On October 21, 2008, the BOP published regulations implementing the SCA. 73 Fed. Reg. 62,443 (2008)(codified at 28 C.F.R. §§ 570.20-22). Section 570.21 provides that inmates may be

designated to community confinement near the end of their prison terms, not to exceed 12 months.  Section 570.22 provides that "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."  The rules were effective on the date of publication and comments were accepted until December 22, 2008.  As of the date of this opinion, the BOP has not issued final rules.

**C.   November 14 Memorandum and Program Statement 5100.08.**

On November 14, 2008, the BOP issued another guidance memorandum to staff, pertaining to inmate requests for transfers to RRCs when they have *more* than 12 months remaining on their sentences.  (Pet. Ex. G.)  The November Memorandum clarifies that RRCs are penal institutions; that staff cannot automatically deny RRC transfer requests; and that all requests must receive individualized consideration in conjunction with their next scheduled program review.[3]  The November 14 Memorandum instructs that at the inmate's program review, staff must provide individualized consideration of the § 3621(b) factors and Bureau policy to ensure placement of inmates "in a facility commensurate

---

[3]Program reviews occur approximately every 180 days.  P.S. 5322.12 at 4-5.

with their security and program needs," under Program Statement 5100.08.[4]  (Pet. Ex. G, p. 3.)

In the November Memorandum, staff are admonished to consider the resources and purposes of available RRCs which are designed to assist inmates with reintegration into the community.  The memorandum also reiterates that RRC placements for longer than 180 days require unusual or extraordinary circumstances and approval from the Regional Director:

> The level of structure and supervision available at these facilities is designed to assure accountability, provide program opportunities in employment counseling and placement, substance abuse, and aid inmates in acquiring daily life skills so as to successfully reintegrate into the community at large.  An RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs. (Id.)

### DISCUSSION

Petitioners *do not* challenge their individual RRC placement decisions, but instead ask this court to invalidate the BOP's

---

[4]Program Statement 5100.08, in turn, details the BOP's inmate security designation and classification system.  Although petitioners assert that Program Statement 5100.08 is substantively and procedurally invalid in their second amended petition for habeas relief, petitioners offer no specific argument concerning Program Statement 5100.08 in their supporting memorandum.  Accordingly, this court considers those arguments abandoned.  In any event, several courts have determined P.S. 5100.08 is a valid exercise of discretion and comports with § 3621(b).  Heppner v. Roal, 2010 WL 1380146, adopted in full, 2010 WL 1380141 (D. Minn. Oct. 21, 2009); Crim v. Adler, 2009 WL 1309589 (E.D.Cal. 2009); cf. Moody v. Daggett, 429 U.S. 78, 88 (1976)(an inmate has no constitutional right to any particular custody or security classification).

policies and seek reconsideration of their RRC assessments without reference to the alleged six-month presumption.  I first address petitioners' statutory arguments, then turn to their arguments under the APA.

**I.  <u>Consistency with the Authorizing Statute</u>.**

It is well settled that agency action must be consistent with the authorizing statute.  <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984).  If the statute speaks to the issue, "that is the end of the matter." <u>Id.</u>  If the statute is silent or ambiguous with respect to the specific issue, the court must "sustain the agency's interpretation if it is 'based on a permissible construction' of the Act." <u>Barnhart v. Walton</u>, 535 U.S. 212, 218 (2002)(quoting <u>Chevron</u>, 467 U.S. at 843).  This analysis applies to the BOP's interpretation of a statute, even if that interpretation only appears in a program statement or other internal agency guideline.  <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995); <u>Bowen v. Hood</u>, 202 F.3d 1211, 1218 (9th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1111 (2001).

**A.  Program Statement 7310.04 and the April 14 Memorandum are Consistent with § 3624©.**

Petitioners contend that P.S. 7310.04 and the April 14 Memorandum create a "six month presumption" by requiring Regional Director approval and thus are contrary to § 3624©.  Petitioners assert that Congress intended a 12 month RRC placement for each

inmate, with a shorter duration justified only by application of the § 3621(b) factors.  In response, respondent argues that the BOP policies are within its statutory discretion under §§ 3624© and 3621(b), and that nothing in the text of § 3624© requires a pre-release RRC placement, let alone a 12 month placement.

Contrary to petitioners' suggestion, § 3624© does not guarantee a pre-release RRC placement, and certainly does not guarantee a 12-month placement.  The duty imposed by § 3624© is for the BOP *to consider* placing inmates in an RRC for up to 12 months. See Rodriguez, 541 U.S. at 1184.  The statute provides that the BOP shall place inmates under such "conditions" that will afford inmates an opportunity to adjust and prepare for reentry.  Those conditions "may" include an RRC, but the plain text does not *require* such placement.  Stanko v. Rios, 2009 WL 1303969 *2 (D. Minn.  May 8, 2009), aff'd, 2010 WL 668790 (8th Cir. 2010)(unpublished).  See also Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004)(§ 3624(c)(2000) imposes a duty to facilitate inmate's reentry, including, but not limited to RRCs, home confinement, drug or alcohol treatment programs); United States v. Laughlin, 933 F.2d 786, 789 (9th Cir. 1991)(§ 3624(c)(2000) does not guarantee a right to RRC time).  Additionally, the duty to consider RRC placements is limited "to the extent practicable."  See Elwood, 386 F.3d at 847 (BOP's obligation to facilitate inmate's reentry is

limited by practical concerns such as security or space limitations).

Petitioners' reliance on Strong v. Schultz, 599 F.Supp.2d 556 (D.N.J. 2009), and Krueger v. Martinez, 665 F.Supp.2d 477, 483 (M.D.Pa. 2009), is not persuasive.  In Strong, the court concluded that the April Memorandum was inconsistent with the SCA because, "[b]y increasing the placement period to 12 months and requiring the BOP to ensure that placements are long enough to provide 'the greatest likelihood of successful reintegration,' Congress intended that each inmate would be considered for a placement of the longest duration–12 months–although the ultimate placement may be less than 12 months, if warranted by the application of the § 3621(b) factors[.]" Strong, 599 F.Supp.2d at 562.  The Krueger court employed a similar analysis, concluding that by denying staff unfettered discretion to recommend extended pre-release RRC placements, the BOP policies fail to provide a truly individualized review.  Id. at 483.  I respectfully disagree.

The Strong and Krueger courts' analysis overstates what is required under § 3624©.  As discussed above, the statute does not guarantee a 12 month pre-release RRC placement.  Likewise, § 3624© does not require that an RRC placement be of the greatest duration–only that it be "of sufficient duration" to provide the greatest likelihood of success.  What conditions, including what is a "sufficient duration" to ensure the greatest likelihood of

success has been left exclusively to the discretion of the BOP.  It
is for the BOP to determine whether an inmate should be placed in
an RRC, if at all, and for what length of time.   The majority of
courts to address this issue have concluded that the requirement of
Regional  Director  approval  for  extended  RRC  placements  is
consistent with § 3624©.  <u>See, e.g.,</u> <u>Smith v. Sanders</u>, 2009 WL
2900317, *6 (C.D. Cal. Sept. 3, 2009)(nothing in SCA requires an
RRC  placement,  and  RRC  placements  are  solely  within  BOP
discretion); <u>see</u> <u>McDonald v. Obama</u>, 2010 WL 1526443, *6 (M.D.Pa.
Mar.  15,  2010), <u>adopted  in  full</u>,  2010  WL  1526447  (Apr.  15,
2010)(collecting cases).

Petitioners  also  contend  that  the  BOP's  policies  are
inconsistent with § 3624© because the BOP's interpretation fails to
give effect to the provision which provides for home detention.  18
U.S.C. § 3624(c)(2).   According to petitioners, inmates are now
eligible for 12 months of RRC time, *in addition* to six months in
home detention.

Section 3624© provides in relevant part:

The authority under this subsection *may be used* to place
a prisoner in home confinement for the shorter of 10
percent of the term of imprisonment of that prisoner or
6 months. (emphasis added).

By using the term "may," Congress has indicated that the BOP
has the authority to place inmates in home detention.  But, as this
plain language demonstrates, nothing requires the BOP to place

inmates in home confinement, or to *consider* inmates for home
confinement. Furthermore, nothing in the statute indicates that an
inmate is entitled to six months home confinement *in addition* to
his right to be considered for a pre-release RRC placement.[5]

In sum, having reviewed the text of the SCA as a whole, I
conclude that the text of § 3624© does not unambiguously guarantee
a 12 month pre-release RRC placement with less time justified only
by application of the § 3621(b) factors. Because the statute is
ambiguous with respect to whether the BOP may consider any
additional factors or conditions, I must determine whether the
BOP's interpretation is a permissible one.

Because the April 14 Memorandum and P.S. 7310.04 are internal
agency guidelines and exempt from notice and comment (see *infra* p.
26-28), the agency's interpretation receives deference under
<u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).[6] Under <u>Skidmore</u>, the
amount of deference accorded "depend[s] upon the thoroughness
evident in its consideration, the validity of its reasoning, its

---

[5]Petitioners also complain that the BOP's interpretation
fails to give effect to the SCA's direction to provide improved
prisoner re-entry procedures. 122 Stat. 642, Sec. 231 (Pet. Ex.
C (#48) p. 27-29). Section 231 of the SCA, however, pertains to
the creation of federal prisoner reentry initiative codified at
42 U.S.C. § 17541, and thus is not controlling with respect to
the particular SCA amendments in § 3624©.

[6]Policies, rules or regulations that have undergone notice
and comment are entitled to deference under <u>Chevron</u>. 467 U.S. at
483-44; <u>Reno v. Koray</u>, 515 U.S. at 60; <u>Tablada</u>, 533 F.3d at 806.

consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." <u>U.S. v. Mead</u>, 533 U.S. 218, 228 (2001); <u>Tablada v. Thomas</u>, 533 F.3d 800, 806 (9th Cir. 2008), <u>aff'd sub nom</u>, <u>Barber v. Thomas</u>, No. 09-5201 (Slip Op. June, 7 2010).

A detailed examination of the April Memorandum as a whole reveals its reasonableness and persuasiveness.  The BOP policy sensibly concludes that to accommodate longer RRC placements, RRC assessments must be provided 17-19 months (instead of 11-13 months) prior to the projected release date; that inmates must receive individualized consideration using the five factors in § 3621(b); and that staff must ensure that pre-release RRC placements are of sufficient duration to provide the greatest likelihood of successful reintegration.

Given the BOP's broad discretionary authority under § 3621(b), and that Congress expressly did not limit that authority in the SCA, it is permissible for the BOP to consider additional factors, such as Regional Director approval and unusual or extraordinary circumstances for RRC placements beyond six months.  <u>Miller v. Whitehead</u>, 527 F.3d 752, 757-58 (8th Cir. 2008)(concluding P.S. 7310.04 requiring extraordinary circumstances is within BOP's discretion); <u>Daraio v. Lappin</u>, 2009 WL 303995, *5-6 (D.Conn. Feb. 9, 2009), <u>adhered to on recon.</u>, 2009 WL 712363 (March 13, 2009)(same); <u>Ballew v. Sanders</u>, 2010 WL 986762, *5, (C.D.Cal. Feb.

18, 2010), adopted in full, 2010 WL 1005306 (Mar. 15, 2010) (determining that BOP guideline requiring extraordinary circumstances and regional director approval was not a categorical exclusion). Although the BOP must consider the five factors of § 3621(b) when making placement decisions, courts have interpreted the enumerated list of factors in § 3621(b) as non-exhaustive. Rodriquez, 541 F.3d at 1187; Levine, 455 F.3d at 86; Cohen v. United States, 151 F.3d 1338, 1343 (11th Cir. 1998), cert. denied, 526 U.S. 1130 (1999).

Furthermore, imposing the condition of Regional Director approval for extended RRC placements is rationally related to one of the mandatory statutory factors governing all prisoner placements-the allocation of limited available prison resources. 18 U.S.C. § 3621(b)(1). As one court aptly observed: "Without centralized coordination of these placements, individual institutions applying guidance in different ways could quickly exhaust available inmate housing. Thus the various competing demands for these placements is a factor which strongly cautions in favor of some centralized assessment of extended RRC placement requests." McDonald, 2010 WL 1526443 at *8; Miller, 527 F.3d at 758. Indeed, Congress has vested the BOP with exclusive control over management of its inmate population, specifically directing consideration of resources. See 18 U.S.C. § 3621(b)(1). That the BOP requires the consideration of additional conditions for

extended pre-release RRC placements is a reasonable interpretation of the statute.

In sum, I conclude that the BOP's policy requiring unusual or extraordinary circumstances and Regional Director approval for RRC placements longer than 180 days is a permissible construction of § 3624©, and therefore is entitled to deference.

**B.    The November 14 Memorandum Is Consistent With § 3621(b).**

Petitioners make similar statutory arguments concerning the November Memorandum.  Petitioners argue that by requiring unusual or extraordinary circumstances and Regional Director approval as conditions for extended RRC placements for inmates who have more than a year remaining, the November Memorandum creates a categorical limitation on the BOP's statutory authority to transfer prisoners at any time under § 3621(b).

As I concluded above, the BOP has been given broad discretionary power under § 3621(b) when making inmate placements, and has the authority to consider additional factors, such as Regional Director approval and unusual or extraordinary circumstances for placements beyond six months.  See Miller, 527 F.3d at 757-58.  See Ballew, 2010 WL 986762 at *5.

Moreover, the thoroughness and persuasiveness of the BOP policy is evident in the November Memorandum.  It is a permissible interpretation of the statute, and therefore entitled to deference. See Skidmore, 323 U.S. at 140; Mead, 533 U.S. at 228; Tablada, 533

15 - OPINION AND ORDER

F.3d at 808.  That the BOP has decided to treat RRC requests like other lower security transfer request, at the next program review, is reasonable and logically flows from the conclusion that the BOP has the discretion to place an inmate in an RRC at any time. Rodriquez, 541 F.3d at 1183.  Responding to what could be daily transfer requests would quickly overwhelm and unduly burden BOP staff.  See Miller, 527 F.3d at 757; Calloway v. Thomas, 2009 WL 1925225, *8 (D.Or. July 1, 2009).  Further, the requirement that RRC placements in excess of six months require unusual or extraordinary circumstances and Regional Director approval aids in the BOP's allocation of resources.  See 18 U.S.C. § 3621(b)(1)(BOP shall consider "the resources of the facility contemplated").[7] Accordingly, the agency's interpretation of § 3621(b), as set forth in the November Memorandum, is entitled to deference.

////

////

---

[7]Petitioners argue that the BOP's requirement of "unusual or extraordinary circumstances" for RRC placements beyond six months in the November Memorandum unlawfully imports a definition from the Sentencing Reform Act.  18 U.S.C. § 3582(c)(1)(A)(i).  Under § 3582(c), a sentencing court may reduce an inmate's term of imprisonment if, after considering the factors of § 3553, it finds there are "extraordinary and compelling reasons" warranting a reduction.  Petitioner's argument is unconvincing.  To be sure, there is no indication in the text of the November Memoranda or P.S. 7310.04 that the BOP has incorporated the definition from § 3582 into that policy.  And, as petitioners acknowledge, the BOP has not directed its staff to apply the definition in § 3582 to RRC placements. (See Memorandum in Support (#48), p. 35.)

**C.   The Program Statement and Memoranda Do Not Create a Categorical Exclusion.**

Petitioners argue that the BOP rules have the practical effect of categorically limiting placements to six months or less, thereby frustrating the intent of the SCA and running afoul of Rodriguez. Petitioners assert this categorical effect is evidenced by the fact that no inmates at FCI Sheridan have received RRC placements longer than six months.  I disagree.

The BOP's policies do not contain the same type of categorical exclusion struck down in Rodriguez.  There, the BOP had eliminated all inmates who had not served 90 percent of their sentences from *consideration* for RRC placement.  Rodriguez invalidated those regulations because they, categorically, failed to provide individualized assessments under § 3621(b).

Here, the BOP is providing exactly what Rodriguez requires - individualized placement decisions under § 3621(b).  Moreover, the Memoranda and P.S. 7310.04 permit, through the demonstration of individual circumstances, extended RRC placements.  Miller, 527 F.3d at 757-58; Yaeger v. Whitehead, 2008 WL 2330221 (D.S.D. June 3, 2008).  That the BOP is considering additional factors pursuant to § 3621(b) when making those placement decisions is reasonable, and thus permissible.  Indeed, Rodriguez recognized that the five factors contained in § 3621(b) were not exhaustive.  Rodriguez, 541 F.3d at 1187.  Thus, P.S. 7310.04, the April Memorandum, and the

November Memorandum do not create a categorical exclusion and therefore are not contrary to Rodriquez. See Ballew, 2010 WL 986762 at *5 (determining that inmate received individualized consideration, and that guideline did not establish a categorical rule); Smith, 2009 WL 2900317 at *6 (same).

**II.  The Administrative Prodecure Act.**

**A.  Judicial Review of Final Agency Action.**

The APA authorizes review of final agency action made reviewable by statute. See 5 U.S.C. §§ 701(a), 704. Judicial review of RRC placement decisions is seemingly precluded under the APA by 18 U.S.C. § 3625, which provides that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter," which includes 18 U.S.C. §§ 3621-3626.

However, in a prior decision I concluded that § 3625 does not deprive this court of jurisdiction to determine the validity of the BOP's rulemaking or whether it has exceeded its statutory authority. McGee v. Thomas, 2009 WL 2182385, *9, n.5 (D.Or. July 22, 2009); see also Cozine v. Crabtree, 15 F.Supp.2d 997, 1014 (D.Or. 1998); Gatewood v. Outlaw, 560 F.3d 843, 846 n.2 (8th Cir.), cert denied, 130 S.Ct. 490 (2009); Fristoe v. Thompson, 144 F.3d 627, 630-31 (10th Cir. 1998); Martin v. Gerlinski, 133 F.3d 1076, 1079 (10th Cir. 1998); cf. Davis v. Beeler, 966 F.Supp. 483, 489

18 - OPINION AND ORDER

(E.D. Ky. 1997).  I adhere to that decision.  Accordingly, § 3625 does not preclude judicial review here.[8]

To obtain judicial review under the APA, petitioners must challenge a final agency action.  See 5 U.S.C. § 704; Oregon Natural Desert Ass'n v. United States Forest Serv., 465 F.3d 977, 982 (9th Cir. 2006).  There is no question that the October regulations constitute final agency action, and can be challenged under the APA.  See generally Abbott Laboratories v. Gardner, 387 U.S. 136, 150-51 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977)(APA provides for review of regulations as final agency action); General Motors Corp. v. EPA, 363 F.3d 442, 448 (D.C. Cir. 2004).  It is less obvious whether P.S. 7310.04 and the April and November Memoranda constitute final agency action. Given that the Ninth Circuit repeatedly has analyzed BOP program statements and other policies under the APA, it has implicitly concluded that the BOP policies are "final agency action."  See, e.g., Mora-Meraz v. Thomas, 601 F.3d 933, 939-40 (9th Cir. 2010); Gunderson v. Hood, 268 F.3d 1149, 1154-55 (9th Cir. 2001)(determining program statement was interpretive rule, thus not

---

[8] Although some courts have interpreted § 3625 to preclude judicial review of individualized BOP discretionary decisions, that question is not before me, as petitioners do not challenge their individual RRC placement decisions.  See Minotti v. Whitehead, 584 F.Supp.2d 750, 761 (D.Md. 2008); Brown v. Fed. Bureau of Prisons, 602 F.Supp.2d 173 (D.D.C. 2009); but see Cox v. Thomas, 2010 WL 1687624 (D.Or. Apr. 23, 2010).

19 - OPINION AND ORDER

subject to APA procedural requirements). Accordingly, I conclude that P.S. 7310.04 and the April and November Memoranda are final agency actions, and are appropriate for review.

**B.    The BOP Failed to Comply with the Notice and Comment Provisions of § 553 of the APA.**

Under the APA, a federal agency is required to follow the notice and comment provisions before promulgating substantive rules. See 5 U.S.C. § 553. Section § 553 requires an agency to publish a regulation in the Federal Register, provide a period of time for the public to comment upon the proposed rule, and publish the adopted rule not less than 30 days before its effective date. See 5 U.S.C. § 553(b), (d); Mora-Meraz, 601 F.3d at 940. The advance notice and comment procedure is designed to ensure public participation in rulemaking, and to permit affected parties to adjust their behavior before the final rules take effect. Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1485 (9th Cir.), cert. denied, 506 U.S. 999 (1992); Buschman v. Schweiker, 676 F.2d 352, 357 (9th Cir. 1982); Bohner v. Daniels, 243 F.Supp.2d 1171, 1175 (D. Or. 2003), aff'd sub nom, Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005); 5 U.S.C. §§ 553(b), (d). If an agency fails to adhere to the notice and comment procedures, the regulation is invalid. Buschman, 676 F.2d at 355-56; Paulsen v. Daniels, 413 F.3d 999, 1004 (9th Cir. 2005).

There are two relevant exceptions to the notice and comment provisions contained in § 553(b).  An agency may forego the advance notice and comment procedures if the agency has "good cause" to believe that the process would be "impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(3)(B); accord 5 U.S.C. § 553(d)(3)(30-day advance notice is not required where the agency provides good cause published with the rule); Bohner, 243 F.Supp.2d at 1176.  An agency also is not required to comport with the notice and comment provisions for "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice."  5 U.S.C. § 553(b)(a); Hemp Industries Ass'n v. Drug Enforcement Admin., 333 F.3d 1082, 1087 (9th Cir. 2003).

Petitioners submit that all of the BOP's policies are substantive rules, requiring notice and comment because they have the force and effect of law.  Respondent contends that it has satisfied the "good cause" exception for issuing the October regulations, and thus advance notice and comment was not required.  Respondent also argues that the April and November Memoranda and P.S. 7310.04 are either interpretive rules or general statements of policy, and as such, notice and comment under § 553 was not required.  I address each argument separately.

////

21 - OPINION AND ORDER

1.  **The BOP did not establish good cause to forego advance notice and comment when issuing the October 2008 regulations.**

To invoke the good cause exception, an agency must determine that notice and comment is impracticable, unnecessary or contrary to the public interest. <u>Bohner</u>, 243 F.Supp.2d at 1176.  Notice and comment is "impracticable" when the agency cannot follow § 553(b) and execute its statutory duties, and is "unnecessary" when the regulation is technical or minor.  <u>Riverbend Farms</u>, 958 F.3d at 1484.  The agency must include this finding and a short statement of its reasons with the new regulation at the time of publication. <u>Id.</u>

In this case, the BOP expressly invoked the "good cause" exception.  Here, the BOP published the regulations on October 21, 2008 as "interim final rules" effective immediately, and invited the public to submit comments.  73 Fed. Reg. 62,440-443.  When issuing the interim rules, the BOP provided the following commentary:

> The current regulations on community confinement are not only inconsistent with regard to the time frames articulated by the Second Chance Act, but also conflict with the goals of the new law by articulating a categorical exclusion that would preclude individual determinations.
>
> Adopting these rules through the normal notice-and-comment procedures would not be consistent with the short statutory time-frame provided for implementing these regulatory changes.  Requiring formal notice-and-comment procedures would be contrary to the public interest in this case, particularly because the revision of these

regulations will provide a greater benefit for inmates, through the possibility of a greater community confinement time-frame than that contemplated under the current regulations. Because this change is responsive to mandates in legislation and is interpretive in nature, we find that normal notice and comment rulemaking is unnecessary and contrary to the public interest.

Therefore, to best comply with Congress's mandate that the revised regulations be timely issued, we issue these changes revising subpart B of 28 CAR part 570 as an interim final rule. We will accept comments to this interim final rule and consider and discuss comments received during the comment period in our final rule document. 73 Fed. Reg. 62,440-62,443 (Oct. 21, 2008).

The BOP submits that when the statutory deadline is combined with the potential benefit of increased community confinement time, there is sufficient public interest to satisfy the good cause exception. I disagree with respondent.

Respondent cites no authority for its contention that the public benefit to those affected inmates in this instance justifies foregoing notice and comment. To be sure, the Ninth Circuit has narrowly interpreted the good cause exception, waiving notice only when delay would do real harm. Buschman, 676 F.2d at 357. Moreover, cases indicate that the BOP has been required to adhere to the notice and comment requirements when issuing regulations affecting inmates. Paulsen, 413 F.3d at 1004-05 (finding that BOP did not establish good cause, and failed to explain why it was impracticable or unnecessary to solicit public comment prior to issuing 1997 RAP regulations). See also United States v. Cain, 583 F.3d 408, 421-22 (6th Cir. 2009)(good cause did not exist for

attorney general to forego notice and comment period when promulgating retroactive rule implementing Sex Offender Registration and Notification Act (SOLNA)); but see United States v. Dean, 604 F.3d 1275, 1280-82 (11th Cir. 2010)(finding good cause to forego notice and comment when issuing SOLNA).

Requiring inmates to wait an additional 30 days for the public to comment before implementing regulations that would possibly provide a greater RRC placement is not "contrary to the public interest" as recognized by the courts. Service Employees Intel Union Local 102 v. County of San Diego, 60 F.3d 1346, 1353 n.3 (9th Cir. 1994), cert. denied, 516 U.S. 1072 (1996)("Every day that the DOL delayed clarifying its regulation was another day that the state and local governments might be exposed to unforeseen [financial] liability."); Hawaii Helicopter Operators Ass'n v. F.A.A., 51 F.3d 212, 214 (9th Cir. 1995)(FAA established good cause to issue an emergency rule where it detailed facts establishing increased fatal air tour accidents, some occurring just weeks before issuing the interim rule). Compare Natural Resources Defense Council, Inc. v. Evans, 316 F.3d 904, 912 (9th Cir. 2003) (good cause not established where NFS did not identify exigency beyond data collection complexity and timeliness when issuing seasonal fishing regulations) with Oregon Troller's Ass'n v. Gutierrez, 452 F.3d 1104, 1124-25 (9th Cir. 2006), cert. denied, 549 U.S. 1338 (2007)(good cause established where NFS cited seasonal

and fishery-specific reasons available only a month prior to publishing annual commercial and recreational fishing season regulations).

Furthermore, the BOP's alleged urgency to provide the potential benefit to inmates and comport with the statutory mandate to justify foregoing advance notice and comment is undermined by the fact that it had exceeded the initial 90-day statutory deadline by more than 90 additional days. See, e.g., U.S. Steel Corp. v. United States EPA, 595 F.2d 207, 214 (5th Cir. 1979)(EPA did not establish good cause where it issued regulations a month after statutory deadline); see also Cal-Almond, Inc. v. U.S. Dept. of Agriculture, 14 F.3d 429, 442 (9th Cir. 1993)(agency did not establish good cause for failing to wait 30 days before rule took effect); Western Oil & Gas v. United States EPA, 633 F.2d 803, 810-813 (9th Cir. 1980)(compliance with statutory deadlines alone will not satisfy the good cause exception). Accordingly, I conclude that the BOP has not satisfied the good cause exception to the notice and comment provisions. Therefore, the October regulations should have been promulgated in compliance with §§ 553(b) and (d).[9]

_____

[9]Because I have determined that the October regulations failed to comport with the notice and comment procedures of § 553(b), I decline to address petitioners' arguments concerning their substantive validity or whether they comport with § 706(2)(A).

**2.    The program statement and memoranda are interpretive rules and exempt from notice and comment under § 553(b).**

Whether rules are substantive-requiring notice and comment, or interpretive or a policy statement-exempt from notice and comment, turns not on the agency's characterization of the rule, but on whether the rule affects individual rights and obligations. Chrysler Corp., 441 U.S. at 302; Hemp Indus., 333 F.3d at 1087; Gunderson, 268 F.3d at 1154; Yeller Terrace Comm. Council v. Caseros, 37 F.3d 442, 449 (9th Cir. 1994). Substantive rules create new law, rights or duties, and are promulgated by an agency pursuant to an exercise of delegated power. David v. Donovan, 698 F.2d 1057 (9th Cir. 1983). An interpretive rule is one that advises the public of the agency's construction of statutes and regulations that it has been entrusted to administer. Halala v. Guernsey, 514 U.S. 87, 99 (1995); Gunderson, 268 F.3d at 1154; Ceinture Intern. Corp. v. Halala, 127 F.3d 90, 94 (D.C. Cir. 1997).

In McGee v. Thomas, I determined that the P.S. 7310.04 and the April Memorandum are internal agency guidelines to which the notice and comment provisions do not apply. 2009 WL 2182385 *8-9. I adhere to that determination. P.S. 7310.04 and the April Memorandum clarify how and when individualized consideration for RRC placement will occur. Accordingly, these BOP policies are properly characterized as internal agency guidelines, akin to interpretive rules. Reno, 515 U.S. at 61; Gunderson, 268 F.3d at

1155; Mora-Meraz, 601 F.3d at 940; see also Ceinture, 127 F.3d at 94. Similarly, the November Memorandum advises the public how the BOP will handle RRC transfer requests pursuant to its broad discretionary power. Thus, the November Memorandum is properly characterized as an interpretive rule. Reno, 515 U.S. at 61; Mora-Meraz, 601 F.3d at 940; Gunderson, 268 F.3d at 1154.

Relying on Made-Luna v. Fitzpatrick, 813 F.2d 1006 (9th Cir. 1987), petitioners contend that the Program Statement and Memoranda create "binding norms" by eliminating the discretion of BOP staff to make recommendations longer than six-months. According to petitioners, the memoranda are substantive because they are "replete with references" that staff "shall" and that staff "must." A careful reading of Made-Luna, however, supports the conclusion that the BOP's policies are internal agency guidelines.

Contrary to petitioners' suggestion, requirements of unusual or extraordinary circumstances and Regional Director approval does not eliminate staff discretion. The Memoranda and P.S. 7310.04 do not define the terms "unusual or extraordinary circumstances," leaving BOP staff the discretion to determine whether an inmate's circumstances meet that criteria in particular circumstances. To be sure, BOP staff discretion has been preserved because staff are making individualized RRC placement decisions in keeping with § 3624©. Made-Luna, 813 F.3d at 1013 (agency directive that permits officials to make individualized determinations is a

general statement of policy). <u>See</u> <u>Ryder Truck Lines, Inc. v.</u> <u>United States</u>, 716 F.2d 1369, 1377 (11th Cir. 1983), <u>cert. denied</u>, 466 U.S. 927 (1984)("As long as the agency remains free to consider the individual facts in the various cases that arise, then the agency action in question has not established a binding norm."); <u>Alliance for Bio-Integrity v. Halala</u>, 116 F.Supp.2d 166, 173 (D.D.C. 2000)(rebuttable presumptions leave agencies free to exercise their discretion and may be announced in policy statements); <u>National Min. Ass'n v. Sec. of Labor</u>, 589 F.3d 1368, 1371-72 (11th Cir. 2009)(determining that policy did not establish a binding norm).

In sum, I conclude that the April and November Memoranda and P.S. 7310.04 are internal agency guidelines which do not trigger the procedural requirements of 5 U.S.C. § 553. <u>Reno</u>, 515 U.S. at 61; <u>Mora-Meraz</u>, 601 F.3d at 940.

**C.    The BOP's Program Statement and Memoranda Are Not Arbitrary and Capricious Under § 706(2)(A).**

**1.    § 706(2)(A) standards.**

The APA provides that a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[10]  Under the arbitrary

---

[10]Respondent contends that because the BOP's policies are contained within internal, discretionary guidance directives, the Program Statement and Memoranda are not subject to the APA's

and capricious standard, this court's review of the BOP's policies
is highly deferential, and the agency's action is presumed to be
valid if a reasonable basis exists for its decision. <u>Crickon v.</u>
<u>Thomas</u>, 579 F.3d 978, 982 (9th Cir. 2009); <u>Northwest Ecosystem</u>
<u>Alliance v. U.S. Fish and Wildlife Serv.</u>, 475 F.3d 1136, 1140 (9th
Cir. 2007).

"A reasonable basis exists where the agency 'considered the
relevant factors and articulated a rational connection between the
facts found and the choices made.'" <u>Arrington v. Daniels</u>, 516 F.3d
1106, 1112 (9th Cir. 2008)(quoting <u>Ranchers Cattlemen Action Legal</u>
<u>Fund v. U.S. Dept. of Agriculture</u>, 415 F.3d 1078, 1093 (9th Cir.
2005)). This court may not supply a basis for the agency's action
that the agency itself did not provide. <u>Mora-Meraz</u>, 601 F.3d at
941; <u>Crickon</u>, 579 F.3d at 982; <u>Arrington</u>, 516 F.3d at 1112.
"However, even when an agency explains its decision with less than
ideal clarity, a reviewing court will not upset the decision on

procedural requirements, including § 706(2)(A), citing <u>Miller v.</u>
<u>Henman</u>, 804 F.2d 421 (7th Cir. 1986), <u>cert. denied</u>, 484 U.S. 844
(1987). Respondent's reliance upon <u>Miller</u> is unavailing.
Respondent raises a valid concern about whether an agency, in
directing the exercise of its discretion through an internal
staff memorandum, formulates a binding policy and how that
discretion may be challenged. However, <u>Miller</u> more readily
pertains to the enforcement of due process claims against an
agency, and as such, is not helpful to respondent. <u>See</u> <u>James v.</u>
<u>U.S. Parole Comm'n</u>, 159 F.3d 1200, 1205 (9th Cir. 1998), <u>cert.</u>
<u>denied</u>, 525 U.S. 1186 (1999)(Parole Commission's internal
handbook did not create due process right); <u>Coleman v. Perrill</u>,
845 F.2d 876, 879 (9th Cir. 1988)(same).

that account if the agency's path may reasonably be discerned." Mora-Meraz, 601 F.3d at 941 (internal quotations omitted). This court must look to the administrative record to assess whether the agency has articulated a rational basis for its decision. Id.; Arrington, 516 F.3d at 1112.

    **2.  Analysis.**

    Petitioners argue that by requiring unusual or extraordinary circumstances and Regional Director approval, the BOP policies merely continue the previous six month limitation, and in light of a doubling of RRC time in the SCA, the polices are arbitrary and capricious. Petitioners submit that the BOP's rationale that most inmates' transition needs can be met within six months based on "Bureau experience" is arbitrary and capricious because the BOP did not offer any empirical data or studies to support it, citing Crickon, 579 F.3d at 985.

    To begin, the SCA doubled an inmate's RRC eligibility to 12 months, and consistent with that change, the BOP policies specifically provide that an inmate is eligible for up to 12 months. However, an inmate is not guaranteed an RRC placement for a particular length of time. That determination has been delegated exclusively to the BOP.

    Next, the SCA also requires that the BOP assess an inmate for that eligibility pursuant to § 3621(b). As discussed above, the Memoranda and P.S. 7310.04 provide that inmates receive

individualized consideration, including analysis of the § 3621(b) factors.  The Memoranda make clear that staff are to consider the resources of available RRCs, and to compare those resources with the individual inmates needs, as the mandatory criteria of § 3621(b)(1) requires.  That the BOP applies factors in addition to those found in § 3621(b) is consistent with the statute.

Petitioners complain that the BOP's policies are patently arbitrary and capricious because the conclusion that most inmates' transition needs can be met within six months is not supported by data, studies or an analysis of cost savings to taxpayers.  While identifying data and studies may greatly assist a reviewing court in ascertaining the agency's path, such information is not always required.  For example, in Mora-Meraz the court concluded that the BOP's rationale was readily discernable when it required documented proof of a substance abuse problem within 12 months of imprisonment to be eligible for admission to the Residential Drug Abuse Program. 601 F.3d at 941.  The court determined there was a rational connection between the BOP's "twelve month rule" and its reference to the  Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition(DSM-IV) in its program statement.  Id.  Because the BOP's rationale could be discerned by its reference to the DSM-IV, the Mora-Meraz court concluded a more comprehensive explanation was unnecessary.  Moreover, because Mora-Meraz analyzes an interpretive

program statement and an unwritten BOP policy, I find its analysis the most relevant to the present inquiry.

Indeed, it is inherently logical that an internal agency guideline that directs its staff in exercising its discretion would contain a more limited analysis of its justification than rules which have undergone notice and comment. See Arrington, 516 F.3d at 1114; Crickon, 579 F.3d at 984. See also Yale v. New-Haven Hosp., 470 F.3d 71, 83 (2nd Cir. 2006)("the agency's obligation to explain its reasoning on the record is less extensive for an interpretive rule"); cf. United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 756-57 (1972)(agency determinations are not required to be made "on the record" unless the statute being applied so requires).

Furthermore, this court is unconvinced that the administrative record in this case would include documents other than the October Federal Register notice, P.S. 7310.04, and the Memoranda at issue. See Mora-Meraz, 2010 WL 1462379 at *8 (examining BOP program statement and DSM-IV for rationale). Thus, the data submitted by the parties concerning the number of extended RRC placements is not helpful to my analysis. And, I find comments from various BOP officials at a symposium to be outside the administrative record. See, e.g., Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000)(review is generally limited to the administrative record as it existed when the agency made the relevant decision).

In the instant case, the BOP has a basis for requiring unusual or extraordinary circumstances and Regional Director approval for extended RRC placements which is both reasonable and discernable from the Memoranda. It is rational to assume that without some centralized control over extended placements, the available RRC resources could be quickly exhausted. <u>McDonald</u>, 2010 WL 1526443 at *8-9. It is reasonable for the BOP to be concerned with ensuring that inmates who have the greatest need for the specialized services that RRCs provide have access to them. <u>See</u> <u>Mora-Meraz</u>, 601 F.3d at 943 ("the Bureau is properly concerned with enrolling inmates who genuinely qualify for the therapy" and prisoners who do not qualify "should not be permitted to take the place of another who is in greater need of this intensive treatment"). That the BOP requires unusual or extraordinary circumstances and Regional Director concurrence to ensure centralized coordination for extended RRC placements is neither arbitrary or capricious.

In sum, I conclude that the P.S. 7310.04, the April Memorandum, and the November Memorandum are not arbitrary or capricious under § 706(2)(A).

////

////

////

////

////

////

## CONCLUSION

Based on the foregoing, the second amended petition for writ of habeas corpus (#56) is GRANTED with respect to those members of the inmate class who have been or will be considered for *pre-release* RRC placement in that the court declares that the October 2008 regulations, 28 C.F.R. §§ 570.20-22 are invalid. The BOP is enjoined from considering inmates for pre-release RRC placement pursuant to 28 C.F.R. §§ 570.20-22 until such time as regulations are promulgated in accordance with 5 U.S.C. § 553(b). In all other respects, the second amended petition (#56) is DENIED.

IT IS SO ORDERED.

DATED this _16_ day of JUNE, 2010.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge